HERCULES R. W. ANDREWS *vs.* NEILSON POE.

*Motion to dismiss the Appeal—Objection to admissibility of a Deed in evidence for want of a Stamp, to be taken in the Court below—Usury—Right of the Assignee of a Mortgagor to avail himself of Usury in the original Contract.*

Where it appears that the failure to send up the record within the time prescribed by law, was the fault of the clerk of the Court below, a motion to dismiss the appeal must be overruled.

The Act of Congress of 1863, ch. 4, provides that certain instruments not duly stamped, shall not be received or used in evidence. An objection to the admissibility of a deed in evidence under this provision, ought to

be made in the Court below, and cannot be made for the first time in the Court of Appeals.

Where a person lends a sum of money, the re-payment of which with interest, at the rate of six per cent. is secured by a mortgage, and at the time of the loan and in consideration of it, a portion of the money in excess of the legal rate of interest is returned to him by the borrower, the transaction is usurious.

In the case of an usurious loan secured by mortgage, the assignee of the equity of redemption, may claim an abatement for the illegal interest.

APPEAL from the Circuit Court of Baltimore City.

The cause was argued before STEWART, GRASON, MILLER ALVEY and ROBINSON, J.

*Julian I. Alexander* and *Thales A. Linthicum,* for the appellant.

*John P. Poe,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

It appears that the failure to send up the record within the time prescribed by law, was, in this case, the fault of the clerk of the Circuit Court, and the motion to dismiss the appeal must, therefore, be overruled.

The objection to the deed of November 4th, 1862, for want of a stamp, comes too late. The 95th section of the Act of Congress of 1862, which declared all instruments of writing "*invalid and of no effect,*" unless duly stamped, was repealed by the Act of 1863, ch. 4, and in lieu thereof, it was provided that such instruments should not be received or used in evidence. The objection being, therefore, to the admissibility of the deed in evidence, it ought to have been made in the Court below, and cannot now be made for the first time in the appellate Court. *Sec. 26, Art. 5, of the Code.* The question as to the power of Congress to say what shall or shall not be received in evidence in the State Courts, was

not discussed in the argument, and upon it we express no opinion.

This brings us to the two leading questions in this case—was the loan by the appellant to Gaehle usurious, and if so, can the appellee, as the assignee of the equity of redemption, claim an abatement for the excessive interest?

The respondent admits, in his answer, the loan of the $6,000—the execution of the mortgage by Gaehle to secure the payment of the same with interest, and that at the time, and in consideration of the loan, he received $720 in excess of the legal interest, making in fact *ten per cent.* per annum, *four* of which was paid in advance. Now, what more is necessary to constitute *usury?*

The appellant may have passed his check for the $6,000, and the mortgage may read six per cent. upon its face, and the loan may have been negotiated for Gaehle by a broker, but what boots it, when it is admitted that at the very time when the check was passed, the appellant received back $720? Did Gaehle, in fact, ever receive but $5,280, and can a Court "*wink so hard*" as not to see in such a transaction an attempt to evade the provisions of the law? Now, if there be a principle clearly established by judicial decision, it is that the laws against usury ought to be strictly enforced. Such, indeed, has been the uniform course of decisions under statutes penal in their character, and by which the usurious contract was wholly avoided, or the usurer visited with the penalties of the law; and there is certainly no reason why, in this State, the law should be less rigidly enforced, where no contract is set aside or penalty imposed, but the excessive interest alone forfeited. It has so happened, from the earliest times to the present, that every device and shift which the wit of man could suggest, have been invoked to exempt contracts for illegal interest from the operation of the law, but Courts have not hesitated, in every case, to tear off, with unsparing hands, the mask under which it has been attempted to conceal the usury, and to declare the true nature of the transaction.

It matters not in what part of the transaction it may lurk, or what form it may take — whether it reads six per cent. upon its face, with an understanding to pay an *extra four per cent.*, or whether it be a pretended sale and lease, or under whatever guise the lender—always fruitful in expedients— may attempt to evade the law, Courts of justice, disregarding the shadows and looking to the substance, will ascertain what in truth was the contract between the parties.

Useless indeed would be the law, if usurious contracts could be shielded by such devices, and vain would be the appeal to Courts, if seeing the usury, they were powerless to afford relief. Whether the law be wise or unwise, expedient or inexpedient, we do not propose to discuss. Mr. Jeremy Bentham, and his followers, who think that the necessities of the borrower should be left to the tender mercies of the lender, may be right, and the enlightened nations of ancient and modern times, all of whom have recognized the necessity of usury laws may have been wrong. It is quite sufficient for us to know that the rate of interest is fixed by the organic law of the State.

Being of opinion that the loan in this case was usurious, the only remaining question to be considered, is the right of the assignee of the equity of redemption to claim an abatement for the illegal interest. It is true, that a contract tainted by usury, can be avoided only by a party to it, or by some one standing in legal privity with him. But it is well settled, that a party who is privy by representation as the executor, or in blood as the heir, may set up the defence. Upon the same principle may a party who is privy in estate, as for instance the grantee of him who made the usurious conveyance.

But it was contended that, inasmuch as the validity of the contract was unimpaired by usury in this State, the excessive interest alone being forfeited, there was no reason why any person other than the party to the original contract should be allowed to make the defence. But it must be borne in mind,

that the policy of the law is to discourage such contracts, and that whenever the usury is disclosed, to prevent a recovery of the illegal interest. Be this as it may, the same objection was urged with equal force in *Banks vs. McClellan,* 24 *Md.,* 62, against the assignee of an equity of redemption, under a mortgage executed after the Act of 1845, chapter 352, and it was held that the assignee, being in legal privity with the mortgagor, had the right to redeem upon payment of the mortgage debt and simple interest. The question must, therefore, be considered as settled in this State.

For these reasons the order below will be affirmed.

*Order affirmed.*

(Decided 7th May, 1869.)